Good morning, Your Honor. May it please the Court, my name is Celia Ruman, and I represent Jorge de Jesus-Casteneda. I'm going to try to reserve three minutes for rebuttal, and in the 12 minutes that I use here, I'm going to try to address three of the issues. From jury selection through sentencing, the District Court committed multiple errors warranting reversal. The three that I'd like to discuss with the Court, unless obviously the Court has questions about the others, is the violation of Mr. Casteneda's right to have a jury selected in a manner that was free from race as a consideration. Batson. Batson. The violation of Mr. Casteneda's rights under the Fifth and Sixth Amendment in the District Court's decision to allow the confidential informant in this case to wear a costume while testifying. And finally, the failure of the District Court to instruct the jury as to the meaning of intent in Counts 2 and 3. With regard to the Batson issue, the District Court clearly erred in this case because there was evidence that race played an improper role, and that evidence becomes clear when the Court considers the evidence of pretext in the government's explanation for its strike here. Social worker? The government in this case stated that. Have you ever seen a prosecutor use a peremptory on a social worker in San Francisco? Certainly if this juror had said he was a social worker, it wouldn't be pretext. Well, what did he say he was? He says he was a behavioral health tech, Your Honor. And there's nothing in the record to indicate what a behavioral health tech is. Fancy word for social worker? I actually have no idea, Your Honor, and neither did the government. Would it be irrational for a prosecutor to hear behavioral? Behavioral health tech. Tech. I think this guy's a social worker. The prosecutor might have had questions about it. And the prosecutor could have asked questions of this prospective juror to clarify that. The fact that they didn't is, in fact, evidence of pretext under Miller L2. So the evidence of pretext is apparent in their reliance on this as a reason, which is not what the prospective juror stated. The evidence is apparent in the fact that they chose not to ask any questions to clarify that. But that wasn't the only thing the government said in justifying this strike. It said it struck this juror because he was single and had no children. This juror was, in fact, single. But being single was not a bar to serving on this jury for jurors who were nonblack. Indeed, five jurors sat on this case who were single. So being single was not a bar. Additionally ---- Doesn't the prosecutor look at a variety of factors and he can put them together? So single, no children, whether or not he made a mistake about no children. He puts that together with, in his mind, social worker. I don't know. It's a preemptory. Sounds pretty good. It would be if there was anything in the record that they could rely on here to support that. And first of all, the prosecutor did not make a confluence argument. He said these were independent factors in his decision to strike this juror. So he didn't tell the district court. And as this Court's aware, it's not an exercise in whether this Court can come up with a justification for the strike. The strike rises and falls on what the prosecutor stated at the time. Well, it's a little more than that. It's a question of credibility found by the district judge. Now, maybe he made a mistake, but, you know, 15 years I tried these jury cases, and I'm sure I excused some people that I shouldn't have. So it's an issue of the determination of a judge that what he's saying, although it may be wrong or dumb, is credible. And so we have that credibility finding coming up here of the judge. Now, why should we reverse the finding of the judge that it was not due to race when our cases specifically say you're to give great deference, our words, great deference to the judge's credibility. I'm trying to get you to shift from the prosecutor to the judge because that's where our case is. Well, in focusing on the judge, the judge's decision would have been proper, except for that here it was an implausible decision to rely on these statements from the prosecutor that had no support in the record. And that's really what's at stake here. Of course, credibility is ultimately the determination the judge is making. And that's why this Court has a clearly erroneous standard. But in order to make that determination, it has to be based on things that are supported in the record. This prosecutor did not say it was a demeanor question where it was a question of thinking, well, that the district court would have been in a position really to assess. The prosecutor stated clear bases that had no support in the record. And ‑‑ No support, just guessing on his part. But you do a lot of that when you pick juries because asking questions sometimes is a little bit strange.  And it's not like the usual fact‑finding that we have. Certainly ‑‑ I want to get around that so that we can make a test, but it doesn't completely shackle the trial lawyer. Well, the test has already been articulated by the Supreme Court in both Batson and, for example, the Miller L. Too case. It allows this Court to do a meaningful review of what happened at the jury stage. So while there is great deference, it is not a blanket for the prosecutor to ‑‑ for the district court judge to have done anything that the district court judge wanted. This Court has an obligation to look at the record. And Miller L. tells this Court that when the state fails to engage in meaningful questioning about a subject that it alleges is a basis for a strike, that's affirmative evidence of sham and pretext. For the district court to have relied on that when the prosecutor didn't ask any questions was clearly erroneous because this was not supported in the record. There were five jurors who sat in this case who were single and had no children. You're right that questioning can sometimes pose a problem that could poison a jury. But these aren't the kinds of issues where that was going to be the case. Simply clarifying what the nature of a behavioral health tech does or their job is, is not going to poison any jury. Moreover, asking a juror to clarify whether they have children or not is not going to ‑‑ When a person is single, asking if you have children is considered offensive, at least it used to be in the old days. Wouldn't a trial lawyer be somewhat concerned that he'd poison the rest of them by asking offensive questions? I don't think so, Your Honor. And the reason for that is ‑‑ If you have any illegitimate children, it would be a very difficult question to ask. Well, certainly the world has changed and there are many people who have children outside of wedlock. So being single isn't necessarily going to impugn someone by asking them to clarify whether they have children or not. You're representing a client. You don't take a chance. Well, you do if you have to, if you're going to rely on that as a justification for a strike that is of the sole African American in the jury pool. And the government had that opportunity and it didn't. Because of that, taken together, all of this information supports our argument that the district court clearly erred here in allowing this strike, this race-based strike, and we would ask this court to reverse on that basis. Moving on to the disguise issue. In this case, the confidential informant testified wearing a handlebar mustache, a wig, and using the pseudonym of CI1261. This really wasn't a disguise, although we refer to it. This was a costume. The government could have disguised this witness in a way that would have been unobtrusive, but it chose not to. It chose to put a handlebar mustache and a wig on this confidential informant. Counsel, was his face and were his eyes visible by the jury so that when questions were put to him, his reaction could be observed by the jury? Yes, Your Honor. In the same way that they were ---- We have a little problem with the record. I know we're not letting you get to your point, but this is a very interesting case. Initially, he was also going to have glasses on, so the jury couldn't even look at his eyes to see if they were rolling. Then an objection by the defense was granted. So then we have a new situation where there's the handlebar mustache and the wig. But I didn't find anything in the record where an objection was made after the decision that the glasses had to be removed. While the argument by trial counsel focused on the glasses, the objection wasn't granted as to the glasses. The government ultimately changed their position and decided to have the witness testify without them. But the objection was to the use of the disguise at all. How was the objection saved when the government decides the glasses come off and then there's no further objection? That's the problem I'm having. The court never had a chance to rule on that because there's no objection made to that handlebar and handlebar mustache in here. I understand your argument. I'm just wondering if it was saved. I believe it was saved. The trial counsel objected to the costume and focused the specifics of his argument on the glasses. But he objected to the use of the disguise at all. And, indeed, that was what the court was ruling on in deciding that this witness could testify in a disguise was a response to the objection. Now, the objection itself was framed in terms of credibility. But credibility is also affected by having someone testify wearing a handlebar mustache and a wig in that it draws attention to this witness in a way that's really improper. No other witness testified in this kind of a costume or disguise. And it drew – I'm sorry, Your Honor. Let me ask you this. Wasn't there some questioning as to why he was wearing the disguise? He was a confidential informant. He was going to go back undercover. He was going to be useful to the government again. There was an argument presented by the government. And the argument wasn't – they didn't present evidence to support the need for the disguise. What they did was they presented assertions about the nature of this confidential informant's work. But this Court in Ellis said there has to be substantial evidence to justify the use of a measure, a safety measure in the court. What is the basis for objecting to the disguise? I think we were talking first about we have to have the jury be able to assess his credibility. And then is there something else? Was he arguing that there's prejudice because this makes my client look dangerous and confrontation clause? I don't understand exactly what the basis was and is. What the trial court focused on was credibility. What we have articulated before this Court is that that invokes both Fifth and Sixth Amendment implications. Here, the use of the disguise could communicate to the jury, and the government in its brief actually concedes this, that it could have communicated to this jury that Mr. Castaneda was a danger to this witness, as well as they could have concluded that somebody outside of the courtroom was a danger to this witness. It's that possibility that affects and violates Mr. Castaneda's rights. Does the jury know this is a confidential informant? I believe that they were told that, yes. Okay. So doesn't the jury already know that there's a potential for danger from outside, inside, all around? I'm just not sure that the disguise tells the jury anything more than it already knows. Well, I think the disguise does tell the jury something more. It indicates that this witness has to hide from this defendant in the courtroom. But the witness, but the defendant in this courtroom had seen this witness without a beard, without a mustache, without anything. He'd seen him. Absolutely. He's identified. Absolutely. It's not telling the jury that they have to hide from this guy. It's the possibility that's the problem. And the Spain case, I think, makes it clear that where there's the possibility that it could affect the jury's perceptions, there's a problem. And here the Court could have used less intrusive ways to protect this witness. Do you have any Ninth Circuit court cases which deal with the issue of what extent a witness can be disguised without violating a defendant's Confrontation Clause rights? No. There is not a Ninth Circuit case on this, although this Court in Ellis made clear that when the Court is considering safety measures for a witness, there has to be a substantial showing. And there wasn't a substantial showing. And in fact, this Court refers to the Palermo decision that says that the threat must be actual and not the result of conjecture. This witness was an important witness. The government highlighted this witness in its closing argument as a basis. There was prejudice. This was not a marginal witness. They used this witness last. And I see that I am quickly running out of time, so I'm going to, I guess, reserve the rest of my time. Why don't you use the rest of your time? We'll give you two minutes before rebuttal and talk about your intent and structure. Thank you, Your Honor. With regard to the intent instruction, in this case, the jury was confused about what intent meant. Nothing in the instructions told the jury what intent meant in counts two and three. The district court asked the court to explain what intent meant, and the district court considered the question and ultimately resolved that he would not give the jury an instruction that defined intent. What he resolved to do was to direct the jury to look back at the instructions and to rely on their common everyday understanding of the word intent in deciding this case. There are problems with both of those things. With regard to the referral back to the instructions, the instructions, there was no question in this case as to whether he possessed the drugs. The question had to do whether he possessed the drugs with the requisite mental state. And here the mental state was knowledge and intent to distribute. The knowledge element, the jury was told, could be satisfied through a deliberate ignorance instruction. They could find knowledge with no knowledge. When the district court referred the jury back to the instructions to figure out what the mens rea meant for intent in the same instruction, it wouldn't have been implausible for the jury to conclude that if you can have knowledge with no knowledge, a word everyone knows what knowledge means except for the legal context, you can have intent with something less. And we don't know what that could be, but it wouldn't have been implausible on the mens rea for the jury to conclude that. Moreover, if they followed the district court's instruction to focus on the definition of the common everyday understanding of intent, that includes a range of mental states. I think the second most common Webster's dictionary definition is the state of mind with which an act is done. Any state of mind. And so telling them to rely on their common everyday understanding of the definition of intent was inadequate. And for that reason, the district court erred in failing to instruct on the question of intent. And with that, I will submit. Thank you, Your Honor. You have two minutes for rebuttal. Did you try this case below? I did not. Too bad. Go ahead. Good morning, Judge. May it please the Court. My name is Josh Parecki. I was the trial counsel in this particular case. I represent the United States of America. Let me just start with what the defense attorney or the appellant defined as the kind of primary issues that were of concern. And starting first with Batson, I think Judge Wallace made kind of a repeated and good point, and that is in this case what this Court should be considered is be considering rather is whether in the exercise of his great deference, this particular court committed clear error. I think that that's a really important standard for this Court to keep in mind because the district court is in the most unique and fitting position to judge the conduct of the prosecutor, of the government in this case, the demeanor, the way the questions were asked, the kind of atmospherics of the courtroom, things that have been discussed in some of the precedent, the Batson precedent in this case. And it's with this in mind that the government would suggest that the Court simply didn't commit any error in determining that the government came forward with, quote, multiple adequate nondiscriminatory reasons for exercising its strike. What were they? I'm sorry? What were they? The three reasons, Your Honor, were that the, and I want to get the quote right, but it's something to the effect of that the government felt that juror number 23 was a caseworker involved in the social work field, that the juror number 23 was a single individual, and that juror number 23 had no children. Those are the three reasons that the government provided in exercising its strike. Your opposition says that there's nothing in the record to be able to test that because the government never asked the questions to get it on the record. That's an interesting question because we're trying not to poison a whole jury pool, but we do have responsibility following Batson, as outlined by the Supreme Court. What's your response? Well, I think, I do agree it's an interesting question, but I think it flips the burden on its head a little bit. Here it's the burden of the defense to prevent, present any kind of evidence that the government's rationale was based on some type of racial bias. No, but that isn't what this, what she's arguing is there's nothing in the record upon which to test the district judge. I understand that, Your Honor, but it's the the government puts things on the record so that there's an actual test that the defendant shouldn't have to pay. But that's not the standard, Your Honor. And I would argue that the appellant kind of miscites Miller-Ell for that proposition. Miller-Ell, it was very clear on that record that the government had used its strikes as a pretext because the defense in that trial had asked follow-up questions about whether or not it was challenging the government's reasons for its strike. We don't have this in this case. It's the defendant's obligation during trial to show that the government used its strikes in a racially biased manner. It's not the defendant's obligation then to re-protect the reasons it gave for its strikes. It's the defendant's obligation to show that those are pretexts. Here there is no evidence that they're pretexts, either at trial or through this case. And I think that's the case.   I think that's the case. I think that's the case. Thank you. Kennedy. Where did the Can you give me a record citation as to where you said that the basis of the strike was, A, the juror 23 was a social worker, B, that he was single, and C, that he had no children? I can, Your Honor. I have it in my – actually, let me just look at my brief. That's probably the easiest way to address Your Honor's question. I appreciate you citing me to your brief. I think it may be opening brief to page 25. But I'd like to – I see that he – when he was asked questions, he said, I am not a behavioral health tech for the Arizona Mentor Network. No military service and no prior jury service. You didn't use those two, the last two. But where did you say we want him – we're using a peremptory against him because he's a social worker? I'm sorry. I was just looking for my brief because I think that's the place where I cite the record. So let me just get to that real quick. And I apologize for causing the delay here. All right. Your Honor, it's on the record transcript on – or the SER 223 and 224. 223, okay. And I specifically say that the individual is a – this is a quote, the individual is a caseworker, is involved in the social work field. We felt that this job background was such that we were uncomfortable keeping the person on the panel. The 223 – the 223? On the SER, Your Honor. And the record of transcript on April 19, 2011, pages 92 and 93. That's where I laid out the – my rationale or the government's rationale, that is, that he's a caseworker involved in the social work field. And as Your Honor suggested, the juror number 23, your – veneer panel member number 23, had identified himself as a behavioral health tech for the Arizona Mentor Network. What is the Arizona Mentor Network? Do we know? I don't know, Your Honor. Maybe that gets back to Judge Ross's point. I didn't ask any questions about the – what the Arizona Mentor Network is. But I would suggest that's not the standard for this Court's evaluation of the government's rationale for striking. And I would suggest, or the government would suggest, rather, that it's not unreasonable. And I think Judge Bea brought this up, but it's not unreasonable that the government concluded on the basis – on that identification, that is – The 224, line 10. In this case, we would note that this individual is a caseworker, is involved in the social work field. We felt that this job background was such that he was – that we were uncomfortable keeping the person on the panel. Right? That's correct, Your Honor. That is what I said. And again, I think that the government would suggest that it's not – first of all, I don't believe that there's any evidence on the record to conclude that somehow that rationale or somehow that characterization of juror number 23 is, in fact, incorrect, and the government would go one step further to suggest that it's a reasonable interpretation of what juror number 23 identified himself as. Kennedy. I'm sorry. I'm sorry, Your Honor. Did anybody challenge you at the trial and say, why do you think he was a social worker? No, there was no challenge. And that, again, goes to the broader point that I made earlier, and that is, it's the defendant's obligation at trial to kind of – to use the vernacular, call the prosecutor to the mat on its rationale for making its strike. And the danger of engaging in this, as the Supreme Court has pointed out, the danger of engaging in this kind of retrospective comparative juror analysis is that, especially when there's no record made by the defendant, we kind of get a little bit – or the Court finds itself in a very difficult position, arguably inappropriate under Batson standards. I'll go ahead and move on, to the extent that the Court doesn't have any questions on – any further questions on Batson. I'll kind of go ahead and move on to the pseudonymous and light disguise issue. It's interesting. I think, Your Honors, you pointed out a couple things with respect to this issue, and that is, first, I think Judge Wallace, I think you noted the fact that as the initial challenge came in for presenting this particular testimony, the government initially suggested it would have the accomplishment informant testify in a wig, a handlebar mustache, and sunglasses. The government later withdrew the objection to the sunglasses, and the defendant did not articulate any further objections on the record. I think that, insofar as the evidence that the government presented in terms of why it was asking for this particular accomplishment informant to testify in this fashion is, we suggested to the Court that the CIA was involved at very high levels with members of the Sinaloa cartel. We suggested that the Sinaloa cartel was a particularly dangerous cartel. Besides your suggestions, did you have any evidence in camera to the judge as to him being of these things which you were suggesting? Nothing on the record, Your Honor. I would suggest, though, besides the exact reasons that the government put on the record for having the confidential informant testify in this fashion, I think this Court should keep in mind, now that it has a pretty complete picture of the case, the nature of the case itself. This confidential informant was testifying against high-level leaders of the Sinaloa cartel that were attempting to procure the most dangerous light arms available on the face of the earth. Well, it didn't have anything to do with this defendant, because you already knew who this guy was. Well, that's right, and that goes kind of to the second point, yes. And the jury, I mean, we can't draw a sheet over them. They have to have something to look at to see if he's telling the truth. So the other alternative would be to lock out the visitors during his testimony. Was that considered? To be frank, Your Honor, no. The government never considered closing the courtroom. The government felt that wouldn't. What your brief says on 42 is that this argument was heard the first time on appeal, and reading that is why I ask your adversary the question. So you've got pseudonym and sunglasses, mustache, and wig. And you take one of the four, and there's no objection. You take one of the four away, and then nothing is stated. So the question is, is there still an objection based upon the pseudonym, the handlebar mustache, and the wig? The government's answer to that is no, Your Honor, not based on this record. Why? Because the defendant didn't articulate any further objections after both at the beginning of the trial and directly prior to the witness actually testifying. No. That's the problem. But there is an objection on four bases. One is removed. Why doesn't the objection stand for the other three? Is this really first time on appeal? Has it been waived, or do we have to get to the merits? Well, I would suggest that it's not clear on the record that the objection is preserved as to those remaining three issues, Your Honor. It's not clear? It is not preserved or preserved. Well, it's not preserved, Your Honor, I should say. Yeah. It's troublesome, because I understand they have to raise an objection, and you properly raised that on page 41 of your brief. But I'm not sure that there isn't still an objection to wig, handlebar, mustache, and pseudonym. Assuming that there is still an objection there, there's two problems. Number one is the jury being able to assess credibility. And number two, the defendant looking like he must be a bad guy because you dressed this guy up. Now, the second one, I think there's a problem, because he already knew who they were. But there is a problem, or maybe a problem, with the jury assessment. What's your response? Yes, Your Honor. So I'll just kind of put this in the, quote, in any event category, this argument. Yes, I think that there really is no infringement on this particular defendant's right of confrontation here as to kind of that first of the second series of arguments, because simply put, the juror, the jury and the defendant really had no issue in assessing kind of the credibility of the witness. There was nothing about the wig or the handlebar mustache that prevented the defendant or the jury in its ability to see, say, the witness's eyes. We withdrew the sunglasses. Facial expressions he may make, furtive eye gestures that some of the court has. What's the picture of what he looked like? I don't. I would note for the record that the court actually made a particularly interesting record on this in suggesting that he was troubled by the notion that if somebody had just, quote, grown out their hair or grown a mustache or came in with sunglasses for personal reasons, that he would, you know, be able to keep them from testifying. But there's nothing on the record indicating that, and so I want to be careful because I was the trial counsel, but there's nothing on the record to indicate that the wig or handlebar mustache obscured the juror's view or the defendant's view of the defendant or the confidential informant's face or facial expressions or hand gestures or things of that nature. And then kind of furthermore on that particular issue, putting aside kind of the demeanor question, that is, the actual kind of ability to cross-examine that witness, I would suggest that because this is relevant to the issue of the pseudonym, that the defense counsel had a very complete record with which to cross-examine that witness and use it. That included his criminal history, his record of payments, and interpretations of the trial record or of the investigatory record and the video, for that matter. I would also suggest, as Ellis kind of points out, I would caution the notion that because the prosecution put this witness on last, it must be one of the most important witnesses. There are many considerations for why the government puts on its witnesses last or first or in the middle. I would note that the defendant in this case was only convicted of the possession with intent to distribute conviction, of count, rather, of count three in this case. The confidential informant was testifying about that and other things. Ultimately, the jury, likely in assessing the credibility of the confidential informant and others, ultimately didn't convict the defendant of the other counts, including kind of the broader weapons conspiracy and otherwise, which may have been the most important reason why the confidential informant was testifying in the first place. So ---- Kennedy. Counsel, if she had any Ninth Circuit court cases dealing with confrontation clause challenges where disguises were used, and she quite candidly said she didn't, do you have any? No, I would suggest ---- I'm with Judge Wallace here. I find this to be an interesting issue, and I hope the Court does as well. Have you read the case of Morales v. Artuse in the Second Circuit? I have, Your Honor. Do you think that case is instructive to us? I do. I think it is. I disagree with the defense counsel's or the appellant's characterization of it as being kind of irrelevant. I think it is. In that particular case, the witness was a very scared witness that had, in fact, was necessary to testify against the defendant. She came into court. She was wearing dark sunglasses. There was a particularly interesting interaction between the judge and the witness where the witness basically stared down the judge and said, I'm not removing these sunglasses. And ultimately, the court said, that's okay. And then that was affirmed because ultimately, the court's kind of assessment, which I would suggest is similar to the assessment in this case, was that those sunglasses were a minimal impairment, actually, to the ability of the defendant to cross-examine the witness. And so I would suggest that case is helpful to this Court as well. Thank you. I've taken some of your time on questioning. Do you want to address the intent instruction issue? Sure. I'll try to be brief about it because of my time. But I would suggest, number one, is this Court has kind of specifically declined to instruct on general intent as, you know, generally in terms of its instructions. The government believes that in this case, the danger of confusion was much greater had the Court, in fact, instructed as to intent contrary to the kind of the Ninth  And so I think that there is a lot of evidence on the issue because it's important to note that the government's burden of proof for possession with intent to distribute is actually a knowing mens rea and not an intentional mens rea. And Bell is actually pretty instructive on that point, you know, suggesting that we don't want to confuse the jury as to what the government's actual burden of proof is in proving possession with intent to distribute. And I think had we endeavored to define that any further, we could have caused that type of confusion. I think the trial court in its use of discretion was quite wise in not instructing the jury further. Maybe I'm saying that because I also made that argument, but I do think that the Court should be affirmed in that. What did the trial judge actually say to the jury? The trial judge said, I have the quote, Your Honor. It's two sentences. He did. It says, The intent has a denotation and connotation with people that is well understood and we – oh, sorry. That was his ruling. I apologize for that. His ultimate – ultimately instructed the jury that please rely on the instruction you have and your ordinary understanding of the meaning of intent. And was there another sentence after that? I don't believe so, no. That was it. What about the second – the phrase then, your ordinary understanding of intent? If he just said rely on the jury instruction, I could understand your argument. But that isn't what he said. He said that and then he added your usual understanding of intent, which is somewhat ambiguous, I suppose. Well, but it's no more ambiguous than often the court could instruct a jury in these kind of circumstances. The jury always has to apply its ordinary understanding of all kinds of words when it comes to the jury charge that aren't specifically defined in the jury instructions. And I think there's really nothing about this particular charge taken as a whole that confused the jury. And I think that's actually evidenced in part by the fact that the jury actually acquitted the defendant of one of the two counts that were confusing them. So clearly, they weren't so confused as to acquit on one of the possession of the conspiracy possession with intent to distribute when they, you know, ended up convicting on only the possession with intent. Okay. I get your point. All right. Thank you very much. Thank you, Your Honors. Counsel. Ms. Rebuno. I'd just like to make a couple of points. On the Batson question, the government asserts that our discussion of Miller-El is misleading. I'll give you the quote from Miller-El. The State's failure to engage in any meaningful voir dire examination on the subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination. So it is, in fact, according to the Supreme Court, affirmative evidence for this Court to consider. With regard to the disguise issue, the trial court, the trial counsel did specifically suggest to the, excuse me, trial counsel specifically suggested to the trial judge that sealing the courtroom might be an option the Court should consider. The government asserts that this issue was in some way waived. But it points out the Court's ruling actually discussed the mustache and beard question. So the Court was ruling on the wig. Yes, I'm sorry. The mustache and the wig question. So the trial court didn't view this as a waived issue. When the trial court ruled, it was actually focusing on that part of the disguise that was an issue. Credibility can be affected by a lot of things. And in this case, the credibility of this witness was highlighted to the jury, no less than if they had put a spotlight on this witness for the jury to consider. This witness testified about critical components of the count that Mr. Castaneda was convicted of. And his testimony is largely dedicated to that day. So I would just point that out to the Court. With regard to the persuasion.  Yes, Your Honor. I would like us to adopt a rule saying that if there is any other reasonable method by which to protect the witness from being discovered as to his identity, such as sealing the courtroom, it's an abuse of discretion for the trial court to allow a witness to be disguised? Well, I don't think I would have a problem with that. I don't know that the Court has to go that far. I mean, I think there's a balancing going on. I think there's a balancing between the interests of the defendant and protecting the witness. The trial court clearly has some discretion in this area. But when there's a conflict, the Court has to resolve that conflict in favor of the constitutional rights of the defendant, I think, and consider what means are available in the – in its arsenal to protect this witness. What major premise in the form of a rule would you ask us to adopt? Well, I would say that the beginning point would be that the district court would abuse its discretion if there isn't sufficient evidence, substantial evidence of an actual threat to this witness in adopting any safety measures. And I would encourage the Court to include a requirement that the district court would consider the other alternatives available to the Court that would not have the implications and would not communicate in the same way to the jury that some other options could. Didn't the Court consider the question of seating in the courtroom? I believe the Court did, and the Court rejected and then accepted that this witness could testify in disguise. And that was an abuse of discretion? I believe that it was in this case because, as I said, there was no substantial showing of the need for it. And additionally, there was no limiting instruction to tell the jury how to consider this fact. The government elicited on – on – Was one – was one proffered? It was not, Your Honor. It was not. With regard to the intent instruction, the only point I'd like to make is that the – the – as I understand this Court's model instructions, it's not declining to get into the discussion of intent for its own sake. My understanding of the reason this Court has not adopted a model instruction is because there are different ways of defining intent. And it was – it directs the trial court to fashion the definition of intent to be appropriate for the count. And so I would encourage this Court to recognize that it was error for the trial court not to do that. And with that, for all the reasons stated in the brief, we'd ask this Court to reverse. Thank you. Thank you.
judges: Restani, Wallace, Bea